# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM DIRK HUIHUI, | : | |
| Plaintiff, | : | |
| vs. | : | CA 20-0530-MU |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff William Dirk Huihui brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 20 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] the Court concludes that the Commissioner's decision denying benefits should be affirmed.[2]

---

[1] The parties waived oral argument. (*See* Docs. 19 & 21).

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 20 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of (Continued)

## I. Procedural Background

Plaintiff filed an application for supplemental security income benefits on or about February 20, 2018, with a protective filing date of December 5, 2017, alleging disability beginning June 23, 2016. (*See* Doc. 14, PageID. 249-54). On or about May 23, 2018, Huihui's application for SSI benefits was denied (*see id.,* PageID. 147) and following Plaintiff's June 14, 2018 request for a hearing before an Administrative Law Judge ("ALJ") (*id.,* PageID. 156-58), two administrative hearings were conducted before an ALJ, first on August 13, 2019 (*id.,* PageID. 124-35) and then on April 16, 2020 (*id.,* PageID. 95-122).[3] On April 29, 2020, the ALJ issued a decision finding that the claimant was not disabled and therefore, not entitled to social security benefits. (*Id.,* PageID. 78-88). More specifically, the ALJ determined that Huihui retains the residual functional capacity to perform a reduced range of sedentary work (*see id.,* PageID. 82-86) and those sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (*see id.,* PageID. 87; *compare id. with* PageID. 117-20). Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council and the Appeals Council denied Huihui's request for review on September 24, 2020. (*See id.,* PageID. 64-66). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to a closed displaced fracture of the left talus, crush injury to the left ankle, post-traumatic osteoarthritis of the left foot, history of lumbar

---

appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

       [3]     At the hearing on April 16, 2020, Plaintiff agreed with the ALJ that the "first" date that could be looked at for determining his eligibility for benefits was December 5, 2017, the protective filing date of his SSI application; therefore, Plaintiff's disability onset date was amended to December 5, 2017. (*See* Doc. 14, PageID. 101-02).

fusion, cervical degenerative disc disease, seizure disorder, depression, and anxiety.

The Administrative Law Judge (ALJ) made the following relevant findings:

> **2. The claimant has the following severe impairments: closed displaced fracture of the left talus, crush injury to the left ankle, post-traumatic osteoarthritis of the left foot, history of lumbar fusion, cervical degenerative disc disease, seizure disorder, depression, and anxiety (20 CFR 416.920(c)).**
>
> . . .
>
> **3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 416.967(a): He can lift and carry ten pounds frequently and twenty pounds occasionally. The claimant can sit for a total of six hours in an eight-hour workday and stand and walk for a total of two hours during an eight-hour workday. He cannot walk on uneven terrain. He is unable to push or pull with the left lower extremity. He requires the use of a cane to get to and from the workstation. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He is unable to climb ladders, ropes, and scaffolds. He can frequently reach. He is precluded from concentrated exposure to extreme heat or cold; no exposure to vibration; no work around unprotected heights or dangerous machinery; no driving automotive equipment; and no work around large bodies of water or open flames. The claimant can perform simple, routine, repetitive tasks with few workplace changes. He can engage in occasional and non-transactional interaction with the general public. He can sustain concentration and attention for two-hour periods.**
>
> . . .
>
> **5. The claimant is unable to perform any past relevant work (20 CFR 416.965).**
>
> . . .

3

> **6.** The claimant was born on April 22, 1972 and was 45 years old, which is defined as a younger individual, age 45-49, on the date the application was filed (20 CFR 416.963).
>
> **7.** The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
>
> **8.** Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> **9.** Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> . . .
>
> **10.** The claimant has not been under a disability, as defined in the Social Security Act, since December 5, 2017, the date the application was filed (20 CFR 416.920(g)).

(Doc. 14, PageID. 80, 82, 86-87, 87 & 88).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[4] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[5] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Huihui contends that the Commissioner's decision to deny him benefits is not supported by substantial evidence because the ALJ failed to consider an important aspect of Dr. Eyston Hunte's RFC opinion. (*See* Doc. 15, PageID. 496-504).

As indicated above, RFC comes into play at the at the fourth and fifth steps of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work . . . and at the fifth step of the sequential evaluation process . . . to determine if you can adjust to other work . . . ."). In determining a claimant's RFC, which is "'that which an individual is still able to do

---

[5] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

6

despite the limitations caused by his or her impairments[,]'" the ALJ "considers all the evidence in the record[.]" *Washington v. Social Sec. Admin., Commissioner,* 503 Fed.Appx. 881, 882-83 (11th Cir. Jan. 15, 2013), quoting and citing *Phillips, supra,* 357 F.3d at 1238.[6] Moreover, at the fifth step of the sequential evaluation process, the Commissioner must establish that a significant number of jobs exist in the national economy that the claimant can perform given her RFC, age, education, and work experience. *See, e.g., Bellew v. Acting Commissioner of Social Sec.,* 605 Fed.Appx. 917, 930 (11th Cir. May 6, 2015) (citation omitted).

As part of the process of determining a claimant's RFC, that is, "the most [he] can still do despite" the limitations caused by her impairments, 20 C.F.R. 404.1545(a)(1), an ALJ must take into consideration the medical opinions of treating, examining, and non-examining physicians and, indeed, this issue is often at the forefront in social security cases. *See Kahle v. Commissioner of Social Sec.,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In March of 2017, the Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c & 416.920c. Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a) & 416.920c(a); *see also Lee*

---

[6] The responsibility for making the residual functional capacity determination at the fourth step of the sequential evaluation process rests with the ALJ, *see, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."), who must "'assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence' in the case." *Phillips, supra,* 357 F.3d at 1238 (alteration in the original), quoting 20 C.F.R. § 404.1520(e).

*v. Saul,* 2020 WL 5413773, *5 (M.D. Ala. Sept. 9, 2020) ("The revisions [to Social Security regulations regarding the evaluation of medical evidence] state that the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources.' 20 C.F.R. § 404.1520c(a)."). The regulations go on to provide that when evaluating the persuasiveness of medical opinions, "[t]he most important factors to be considered are those of supportability and consistency[.]" *Id.* at *5; *see also Swingle v. Commissioner of the Social Sec. Admin.,* 2020 WL 6708023, *2 (M.D. Fla. Nov. 16, 2020) ("When evaluating the persuasiveness of medical opinions, the most important factors are supportability and consistency."). "Thus, the ALJ 'will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions' in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c)." *Id.* (footnotes omitted).

The ALJ analyzed the opinion evidence of one-time consultative examiner Dr. Eyston Hunte in the following manner:

> Dr. Hunte opined that the claimant can lift and carry ten pounds frequently and twenty pounds occasionally, and sit for eight hours, stand for two hours, and walk for two hours in an eight-hour workday. He assessed additional postural and environmental limitations. Dr. Hunte's opinion is somewhat persuasive because most of his findings are consistent with the record. However, Dr. Hunte included limitations such as occasional pushing and pulling with the upper extremities and frequent reaching, handling, fingering, and feeling that are not supported by the normal findings from examination showing no upper extremity atrophy, normal range of motion, normal manipulation, and normal grip strength. He also noted that the claimant is limited to occasional exposure to dust, odors, fumes, and pulmonary irritants, but the claimant has not been diagnosed with a respiratory impairment or other condition that would necessitate this limitation. As a result, this opinion is only somewhat persuasive.

8

(Doc. 14, PageID. 86) (internal citation omitted).

Given that the issue raised by Plaintiff cuts to the heart of the ALJ's RFC assessment in this case, since in reaching that determination the ALJ considered the medical opinion evidence of record (as aforesaid), the Court begins its analysis by specifically finding that the ALJ linked her RFC assessment—that is, a reduced range of sedentary work with identified limitations—to specific evidence in the record bearing upon Huihui's ability to perform the physical, mental, sensory and other requirements of work (*compare* Doc. 14, PageID. 82-86 *with generally id.,* PageID. 363-69, 383, 386, 389-90, 402-05, 408-10, 415-19, 421-22, 426-28, 430-37, 464-65, 468-77 & 483). *See, e.g., Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013). The ALJ explained in some detail how the medical evidence of record supported the components of her RFC determination (*see* Doc. 14, PageID. 83-85; *compare id. with* PageID. 82). Indeed, a significant part of the evidence utilized by the ALJ in making her RFC determination was the consultative examination findings and RFC findings of Dr. Hunte; Dr. Hunte's examination findings were relatively benign (*see id.,* PageID. 474-76 (on physical examination, Huihui was in no acute distress and muscular examination of the left foot revealed pain around the lateral malleolus but intact range of motion; neurological examination found straight leg raising on the left and right to be normal, upper extremity strength adequate, grip strength 4/5 on the left and right, finger to thumb dexterity within normal limits, lower

extremity strength normal, an antalgic gait with cane, limping on the left, no weakness in the legs, deep tendon reflexes 2+, no sensory deficit detected, and no motor deficit detected; examination of the cervical spine produced tenderness but there were no deformities, spasms or crepitus and range of motion was normal; examination of the upper extremities revealed no swelling, normal sensation, 2+ deep tendon reflexes, normal finger to thumb opposition, grip strength on the right and left within normal limits, fine and gross manipulation within normal limits, muscle strength of 4-5 in the left and right flexors and extensors, no muscle atrophy, and normal range of motion in both shoulders, elbows, writs and all joints of the fingers; examination of the lower extremities revealed no edema or redness, normal sensation, 2+ deep tendon reflexes on both the left and right with respect to knee and ankle jerks, identical measurements of the thighs and calves on the left and right, an antalgic gait with limping on the left foot, an abnormal toe walk, and abnormal heel walk, muscle strength of 5 on both the left and right, and range of motion of the hips, knees and ankles were all normal, with the additional notation being tenderness on palpation over the lateral malleolus and mid-foot are of the left foot; and examination of the dorsolumbar spine revealed normal flexion and extension, normal right and left lateral flexion, normal right and left rotation, no scoliosis, no spasms, positive lower lumbar spine tenderness, normal straight leg raising, and no motor or sensory deficits)) and his RFC findings indicated Plaintiff has greater abilities to lift and carry weight, sit, stand and walk (*see id.,* PageID. 468-69 (finding Huihui could lift and carry up to ten pounds continuously and up to 20 pounds frequently and that he could sit a total of 8 hours out of an 8-hour workday and stand and walk 2 hours each out of an 8-hour workday)) than reflected in the ALJ's RFC

determination (*see id.,* PageID. 82 (ALJ's RFC determination included findings that Huihui can lift and carry ten pounds frequently and 20 pounds occasionally, that he can sit a total of 6 hours during an 8-hour workday, and that he can stand and walk a total of 2 hours in an 8-hour workday)). These just-cited RFC findings made by Dr. Hunte are, therefore, supportive of the ALJ's RFC determination.

     And because the undersigned finds that the ALJ's RFC determination is supported by substantial evidence in the record, inclusive of the examination findings and some RFC findings of Dr. Hunte, it should come as no surprise that this Court finds that any failure to address each and every item on Dr. Hunte's physical medical statement of ability to do work-related activities does not constitute reversible error. This is not only because the amended regulations do not require an ALJ to articulate how she considered each opinion or finding from a medical source individually, 20 C.F.R. § 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.") but, as well, because in making/reaching her RFC determination, the ALJ obviously did not find persuasive any RFC finding by Dr. Hunte contrary to her own RFC determination (*compare* Doc. 14, PageID. 82 *with id.,* PageID. 86 (analysis of Dr. Hunte's RFC opinion)). Besides, this Court finds that it was unnecessary for the ALJ in this case to specifically address Dr. Hunte's statement that Huihui "MAY NEED 1 HR BED REST FOR PAIN RELIEF" (Doc. 14, PageID. 469) because the consultative examiner's previously-indicated sit, stand and walk limitations (*see id.* (Hunte specifically indicated that Huihui can sit a total of 8 hours in an 8-hour workday and stand and walk 2 hours total each in an 8-hour workday)) contraindicated Hunte's

statement. Stated somewhat differently, Hunte's referenced response was to the question "If the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" and since Hunte had already indicated that Huihui could sit, stand and walk for more than 8 hours total in an 8-hour workday, he improperly responded to the question and his response certainly cannot be regarded as having any import with respect to whether the ALJ's ultimate RFC determination is supported by substantial evidence.[7] Thus, the ALJ did not err to reversal in failing to mention Hunte's bed rest statement in her decision.[8]

---

[7] Again, as this Court has previously stated, the ALJ in this case specifically linked her RFC determination to substantial evidence in the record.

[8] As an "aside," Plaintiff contends that the ALJ's rationale for finding unpersuasive Dr. Hunte's opinions regarding manipulative limitations (*see* Doc. 14, PageID. 86 ("Dr. Hunte included limitations such as occasional pushing and pulling with the upper extremities and frequent reaching, handling, fingering, and feeling that are not supported by the normal findings from examination showing no upper extremity atrophy, normal range of motion, normal manipulation, and normal grip strength.")) is not supported by substantial evidence since "Dr. Hunte's records make it very clear that Mr. Huihui's grip strength was noted as reduced to 4 of 5 bilaterally which is different from a normal finding[.]" (Doc. 15, PageID. 504). This Court cannot find that the ALJ erred to reversal in this regard either since Dr. Hunte's report indicates both that Plaintiff's grip strength is 4/5 bilaterally (*see* Doc. 14, PageID. 474 (neurologic portion of the examination)) and that his grip strength is within normal limits (*see id.,* PageID. 475 (examination of the upper extremities)). In other words, this Court cannot find that substantial evidence does not support that portion of the ALJ's analysis indicating "normal grip strength" since Dr. Hunte's examination clearly referenced normal grip strength upon examination of Plaintiff's upper extremities (*see id.*).

In addition to the foregoing, this Court would note that a grip strength of 4/5 is still "good," albeit not quite normal, https://www.verywellhealth.com/muscle-strength-measurement-2696427 (last visited, August 31, 2021), and Dr. Hunte's opinion does not indicate how this finding alone (especially in light of his other normal findings with respect to Plaintiff's neck and upper extremities) would translate into (or be supportive of) the finding that Plaintiff can only occasionally push/pull with the right hand and the left hand, even if it could possibly support the consultative examiner's findings that Plaintiff can only "frequently" reach, handle, finger and feel (*see* Doc. 14, PageID. 470). And as an aside of its own, the Court would note that the ALJ's RFC determination actually limits Huihui to "frequent" reaching (*see* Doc. 14, PageID.82) and, furthermore, none of the sedentary jobs identified by the VE in this case (that is, work as a bench assembler, wood products inspector, agricultural sorter, or lens inserter—*compare id.*, PageID. 87 *with id.,* PageID. 118-120) require more than frequent reaching, handling, fingering, (Continued)

In light of the foregoing and because Plaintiff raises no other issues, the Commissioner's fifth-step determination denying benefits is due to be affirmed.

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff a period of disability, disability insurance benefits, and supplemental security income be affirmed.

**DONE** and **ORDERED** this the 13th day of September, 2021.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**

---

or pushing/pulling (feeling being present in none of these jobs). *See* DOT #521.687-086 (nut sorter); DOT #669.687-014 (dowel inspector); DOT #713.687-026 (lens inserter); and DOT #739.684-094 (lamp-shade assembler).